UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARY ANNE TRIBBLE,

                   Plaintiff,                   Case Number 08-10813
                                                 Honorable David M. Lawson

v.

PHILIP CHUFF, JR. and CARPENTERS
PENSION AND ANNUITY FUND OF
PHILADELPHIA AND VICINITY,

                   Defendants.

and

CARPENTERS PENSION AND ANNUITY
FUND OF PHILADELPHIA AND VICINITY,

                   Cross-plaintiff/counter-plaintiff,

v.

MARY ANNE TRIBBLE,

                   Counter-defendant,

PHILIP CHUFF, JR.,

                   Cross-defendant.

_____/

## OPINION AND ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

       The plaintiff, Mary Anne Tribble, commenced this action in this Court in an effort to collect

funds that she claims are owed to her by her former husband, Phillip Chuff, Jr., by virtue of a child

support order entered in a Michigan divorce case. The case found its way into federal court because

the funds were held by the Carpenters Pension and Annuity Fund of Philadelphia and Vicinity (the

Fund), an entity governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, which deposited those funds with our clerk under an interpleader order.

Tribble and Chuff were married in Michigan in 1971. They had three children and moved to Pennsylvania, where apparently they separated. Tribble returned to Michigan with the children and commenced a support proceeding against Chuff, who remained in Pennsylvania; Tribble later filed for divorce. Due to the operation of certain uniform support statutes, support orders were entered in both Michigan and Pennsylvania, but over the years, inconsistent orders were entered by courts in those two states, giving rise to an underlying dispute over the amount of arrearage, if any, Chuff owes Tribble for child support for their children, who have long since attained majority. Tribble filed a motion for summary judgment, which was argued in open court on February 4, 2009. Chuff opposed the motion. To some extent, both parties ask this Court to resolve the dispute over two states' support orders. The Court believes it may not resolve that contest, but it will and does determine the appropriate disposition of the Fund's money that has been deposited under the interpleader order. The Court finds that the rules of claim preclusion compel a determination that the so-called "18-month rule," 29 U.S.C. § 1056(d)(3)(H), does not compel a return of the deposited funds to Chuff; the September 2004 order entered by the Genesee County, Michigan circuit court qualifies as a Qualified Domestic Relations Order (QDRO); and the funds on deposit, therefore, are owed to the plaintiff, Mary Anne Tribble. However, the relief defendant Chuff seeks in his counterclaim is barred under the *Rooker-Feldman* doctrine and rules of *res judicata* or claim preclusion, and the Court has no jurisdiction to determine the propriety of future payments from the Fund. Therefore, the Court will grant in part the plaintiff's motion for summary judgment; order the money on deposit to be disbursed to the plaintiff, subject to the Fund's opportunity to file a

-2-

renewed motion for attorney's fees; deny the motion in all other respects; and dismiss the defendant's counterclaim.

I.

As mentioned above, Mary Anne Tribble and Phillip Chuff, Jr. were married in Michigan in 1971. Between 1971 and 1977, three children were born, and the couple moved to Pennsylvania. Early in 1977, Tribble moved back to Michigan with the children, and she filed a complaint for child support under the Uniform Reciprocal Enforcement of Support Act (URESA), codified in the Michigan code as Michigan Compiled Laws §§ 780.151-780.183. *See* 1952 Pub. Act No. 8, *amended by* 1985 Pub. Act No. 172. That complaint was transmitted to officials in Pennsylvania, and an order for child support was entered by a Pennsylvania court. Later that year, Tribble filed an action for divorce in Michigan, which was inadvertently dismissed during the parties' reconciliation attempt, but which eventually resulted in a judgment following a trial in December 1978. The March 1979 judgment called for a child support payment from Chuff of $156 per week for the three minor children.

Over the years, the parties have argued over which state's support orders control. This dispute has been fueled by the inconsistent orders entered in each state. For instance, on October 31, 1977, the Genesee County, Michigan court entered an order in the divorce case for temporary child support of $45 per week. However, on November 12, 1977, the Bucks County, Pennsylvania court entered an order for child support in the amount of $33.20 per week. Meanwhile, Tribble engaged in efforts in Michigan through the uniform statutes to collect the child support awarded in the divorce judgment. On May 8, 1986, Tribble filed a support complaint in Genesee County seeking payment of the $152 per week plus arrearages. In mid-1986, the Genesee County prosecutor

forwarded the complaint to Bucks County, Pennsylvania officials, who treated it as a request for an increase in amount of support from the earlier order of $33.20 per week.  Then, in October 30, 1986, a Genesee County official accepted an offer to increase child support to $70 per week.

There were other orders entered in both states over the years, but the two states' support orders were never harmonized.  On April 29, 1994, Albert Fonash, Director of the Domestic Relations Office of Bucks County, Pennsylvania, sent a document to Friend of Genesee County that states:

> Enclosed please find a copy of Vacate Support Order regarding the aboved captioned parites. [sic]  Please be advised that we are closing our case effective June 4, 1994 with **NO ARREARS OR OVERPAYMENT ON THE ACCOUNT**.  We advise your office to **COMPLY** with this Order and do the same.

Fund's Ans., Ex. 7.  Also in 1994, Tribble signed a stipulation to vacate a support order of $20 per week for one of the children and agreed that no arrearage was due on that order.  The Genesee County court also dismissed support actions without prejudice to collecting arrearages.

Meanwhile, the children were growing up.  The youngest child attained majority on April 10, 1994.  Apparently the parties were getting older as well, since Mr. Chuff became eligible to receive a pension from the interpleader defendant, Carpenters Pension and Annuity Fund of Philadelphia and Vicinity in the amount of $3,845.88 per month.  None of these events resolved the dispute over the arrearages, however.  In 2004, the Genesee County court issued an order for Chuff to show cause why he should not be held in contempt for failing to comply with the child support order in the judgment of divorce.  At the show cause hearing on July 28, 2004, Chuff paid $11,041.27 to the Genessee County Friend of the Court against the arrearage owed Tribble for back child support.  Then on September 10, 2004, the Genesee County court entered an income withholding order directing the Fund to withhold $473.50 per month from Chuff's pension and pay

-4-

it to the Friend of the Court for Tribble's benefit. On October 20, 2004, the Fund sent Chuff a letter stating that the September 2004 income withholding order constituted a QDRO, but in November 2004, Chuff sent a letter to administratively appeal that determination. Then on January 25, 2005, the Fund sent letters stating that it "will delay a determination on Mr. Chuff's appeal until receipt by the Fund Office of documentation indicating that all appropriate action has been taken in this matter." Fund's Ans., Ex. 10.

Chuff then turned to the Michigan court for relief and filed a motion to terminate arrearages in the Genesee County circuit court. He also sought an order requiring the Fund to hold in escrow the amount subject to the income withholding order until the dispute over the arrearage could be resolved. The latter request was granted via Genesee County circuit court order on February 27, 2007:

> This matter having come before the Court on motion of the Defendant, and the parties, and testimony having been presented in open Court, NOW, THEREFORE,
>
> IT IS HEREBY ORDERED that all monies withheld by Friend of the Court, Carpenter Pension and Annuity Plan of Philadelphia and Vicinity or any other source of Mr. Chuff's income for purposes of child support withholding, via Qualified Domestic Relations Order or any other income withholding order, shall be held in escrow by the withholding party during the pendency of this action and until further order of this Court.

Pl's Mot., Ex. F.

Three audits were performed on April 17, 2007 by the Genesee County Friend of the Court. The first audit was based on an accounting that the Friend of the Court apparently believed was erroneous; it showed that the defendant owed $54,916.68 by 1994 in support and $63,172.67 in surcharges since that time, which after credit for payments received reflected a total outstanding balance of $100,115.43. Chuff's Ans., Ex. JJ. The Friend of the Court representative explained that

-5-

the account should have applied only the Michigan court orders and ignored those from Pennsylvania; under that method, the obligation was $61,988.06 for support, $94,113.92 for surcharges, for a total of $156,101.98. *Ibid.* Finally, an audit was prepared applying the Pennsylvania orders, which showed that the defendant overpaid approximately $17,401.92. *Ibid.*

In the state court, Chuff maintained that the order entered by the Pennsylvania court in the URESA action governs because it was entered first in time, as now provided by the superseding interstate support legislation known as the Uniform Interstate Family Support Act. *See* 1996 Pub. Act No. 310, Mich. Comp. Laws §§ 552.1101-552.1901. Apparently relying on Michigan Compiled Laws section 552.1224, Chuff argued that the Michigan courts must calculate the support obligation of Chuff, a Pennsylvania resident, based on that state's support order, which would leave him with no arrearage owing. That argument did not sell. The defendant's request to terminate arrearage was denied by a written opinion and order filed on October 25, 2007 by the Genesee County, Michigan circuit court. In full, the opinion reads as follows:

> This matter was scheduled for hearing on August 23, 2007. Based on the pleadings, trial briefs and opening statement of Plaintiff's counsel, it became readily apparent that if this 1977 case was to be resolved in any sense, it was best to be done on briefs. The parties were to encapsulate a history of account activity spanning decades and two states. To do otherwise would be an inefficient use of the Court's time as the outcome rests solely on the applicable law in effect at the time various child support orders were entered and charging.
> The Court was provided with little indication in movant Defendant's opening statement as to what could be proven by material and competent evidence, only what Defendant, Phillip Chuff, Jr., 'believed' to be the case. The only concrete evidence available was the series of audits conducted by the Friend of the Court and specifically the audit, which considered Genesee County Orders only.
> Respective counsel put in a great deal of effort in presenting the Court with their version of what was done historically and what this Court should do by way of a determination. However, on balance Plaintiff's position provides the more cogent analysis because the effective dates of pertinent legislation controls the outcome.
> Case No. 77-213075-DU was a Uniform Reciprocal Enforcement Support Act – URESA – Petition from Michigan to Pennsylvania to establish a support order

-6-

for the parties' minor children. As a result, an order was entered in Pennsylvania. Case No. 77-123958-DM resulted in a Michigan Judgment of Divorce with a support order for the parties' minor children.

During the time the minor children were eligible for support, both states entered orders which modified the original order in the respective jurisdictions. The youngest child emancipated in 1994.

Michigan adopted URESA in 1952. The Act remained the controlling interstate support legislation until the adoption of the Uniform Interstate Family Support Act – UIFSA – in Michigan in 1998. UIFSA created a remedy to an inherent URESA problem by providing a method for states to remove multiple states order conflicts.

Here Michigan and Pennsylvania entered support orders. The obligation for current support ended in April of 1994. Enactment of Federal Full Faith and Credit occurred in October of 1994. UIFSA was not adopted in Michigan until 1998. Therefore, the support orders are governed by URESA. The Court must look to the URESA standard applied by the Friend of the Court audit wherein only Michigan orders were taken into consideration. The standard ignores any support order issued in Pennsylvania and credit any payments made in Pennsylvania to the Michigan obligation. Applying UIFSA standards retroactively would create error. Such action would constitute a retroactive modification of a support order. Likewise such action would be contrary to the URESA requirement that other states orders cannot modify Michigan support orders.

The office of the Genesee County Friend of the Court conducted an audit of the Michigan support orders applying the URESA standards. The result is an arrearage calculated at $156,775.68 as of April 24, 2007. This figure is adopted by the Court and is due and owing by Defendant.

Monies currently held in escrow by the Carpenters Pension and Annuity Fund of Philadelphia and vicinity are to be released and paid to Plaintiff, Mary A. Tribble forthwith. Thereafter, the previous payment schedule shall be reinstated.

Pl.'s Mot., Ex. A. On June 27, 2008, the defendant filed a delayed application for leave to appeal in the Michigan Court of Appeals. The application was denied on December 16, 2008 in a short order with one judge dissenting.

By then, $18,940 had accumulated in the escrow account held by the Fund. Despite the state court's order, however, the Fund did not disburse the money, apparently due to litigation threatened by Chuff to challenge the Fund's administrative determination that the income withholding order constituted a QDRO. In the meantime, the Genesee County court entered an amended order on

September 15, 2008 requiring income withholding of $1,922.69 per month.  On October 24, 2008,

Judith Sznyter, counsel for the Fund, wrote a letter acknowledging the order as "qualified under 29

U.S.C. § 1056(d)(3)."

 Complicating matters is a contrary determination from Pennsylvania.  Nancy D. McLaurin,

"a Domestic Relations Officer" with the Bucks County, Pennsylvania Domestic Relations Section,

signed a letter to the various parties on March 24, 2008 stating:

> Enclosed please find the Determination of Controlling Order, pursuant to the
> Uniform Interstate Family Support Act (UIFSA), Section 207, titled "Determination
> of Controlling Child Support Orders."
> After reviewing all pertinent documents (exhibits enclosed), it is the determination
> of the tribunal that jurisdiction for the issuance and enforcement of all support
> matters in Tribble vs. Chuff are vested in the Court of Common Pleas of Bucks
> County.
> A support action was originally initiated in Bucks County, Pennsylvania by petition
> of the plaintiff and the Genesee County, Michigan Prosecuting Attorney's office
> under U.R.E.S.A.  The plaintiff agreed to all modifications to the Bucks County
> order including the **VACATE SUPPORT ORDER** which states, "Vacate effective
> June 4, 1994 with no arrears or overpayment on the account."
> There is no evidence that an action of any type transferred the Continuing Exclusive
> Jurisdiction of this tribunal (court) to Genesee County, Michigan; therefore, no
> arrearages are due the plaintiff.

Chuff's Countercl., Ex. PP.

 There is also a "**NOTICE OF DETERMINATION OF CONTROLLING ORDER**" dated

March 24, 2008.  It is not signed, but Nancy McLaurin's name appears on the document.  It states

that:

> 1. On 3/24/08 (date) COUNTY OF BUCKS, BUCKS COUNTY, PA  (Tribunal
> Name, County, State) determined which order to recognize for prospective
> enforcement.
> [The order then lists a number of Pennsylvania orders.]
>
> 2. The tribunal determined that order number  2 [a support agreement dated
> November 2, 1977] listed above in the table is the controlling order for prospective
> enforcement.

. . .

    5. The tribunal calculated arrears to be <u>$0.00</u> as of <u>6/4/94</u>. . . .

Chuff's Countercl., Ex. OO.

    Tribble filed her complaint in this case on February 28, 2008, seeking a declaration from the Court on whether the "18-month rule" compels a return of the escrowed funds to Chuff, whether the September 15, 2004 order for support is a Qualified Domestic Relations Order (QDRO), and whether any subsequent support order entered by the Circuit Court is a QDRO.  In his counterclaim, Chuff requests the following relief:

> a. That the Court review all child support orders issued by both States to determine that PA has the controlling law.
> b. That the Court determine that the PA child support order had continuing and exclusive jurisdiction.
> c. That the Court order Plaintiff-Counter Defendant to vacate her support order and waive all arrears in the Genesee County case.
> d. That the Court grant Full Faith and Credit to be given to any and all monies paid by the Defendant-Counter Plaintiff on his child support obligation, as paid through Pennsylvania and Genesee County.
> e. That the Court order reimbursement by the Plaintiff-Counter Defendant of any monies overpaid by the Defendant-Cross Plaintiff, in both States.
> f. That the Court determine Defendant-Counter Plaintiff's full and complete child support obligation, if any.

Chuff's Countercl. at 23-24.

    The Fund was named as a defendant and filed cross- and counterclaims for interpleader.  Last August, the Court entered an order discharging the Fund from liability for the escrowed money and ordering the funds to be paid into court.

    Tribble has moved for summary judgment.  Chuff filed an untimely response in opposition, but he did not file a cross motion for summary judgment.

II.

A motion for summary judgment under Federal Rule of Civil Procedure 56 presumes the absence of a genuine issue of material fact for trial. The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (internal quotes omitted).

A fact is "material" if its resolution affects the outcome of the lawsuit. *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001). "Materiality" is determined by the substantive law claim. *Boyd v. Baeppler*, 215 F.3d 594, 599 (6th Cir. 2000). An issue is "genuine" if a "reasonable jury could return a verdict for the nonmoving party." *Henson v. Nat'l Aeronautics and Space Admin.*, 14 F.3d 1143, 1148 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 248). Irrelevant or unnecessary factual disputes do not create genuine issues of material fact. *St. Francis Health Care Centre v. Shalala*, 205 F.3d 937, 943 (6th Cir. 2000). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact. *Michigan Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 534 (6th Cir. 2002). Thus a factual dispute which "is merely colorable or is not significantly probative" will not defeat a motion for summary judgment which is properly supported. *Kraft v. United States*, 991

-10-

F.2d 292, 296 (6th Cir. 1993); *see also Int'l Union, United Auto., Aerospace and Agric. Implement Workers of Am. v. BVR Liquidating, Inc.*, 190 F.3d 768, 772 (6th Cir. 1999).

Neither party suggests that there are material facts in dispute. The record presented to the Court consists primarily of notices, orders, and decrees from the courts of Michigan and Pennsylvania. The main disputes revolve around the competing states' court orders and the effect of ERISA on the income withholding and support orders. Summary judgment under Rule 56, therefore, is a useful method of addressing an issue when the parties agree, as here, that there are no material facts in dispute and "the sole question at issue [is] a question of law." *United States v. Donovan*, 348 F.3d 509, 511 (6th Cir. 2003); *see also Wachovia Bank v. Watters*, 431 F.3d 556, 559 (6th Cir. 2005); *Progressive Corp. and Subsidiaries v. United States*, 970 F.2d 188, 190-91 (6th Cir. 1992).

A.

The plaintiff first makes a challenge to the Court's jurisdiction to hear the defendant's counterclaim, characterizing it as an appeal of the state court's order determining arrearages. The plaintiff, of course, does not challenge this Court's jurisdiction to hear her complaint. *E.g.*, *Medical Mut. of Ohio v. k. Amalia Enterprises Inc.*, 548 F.3d 383, 389 (6th Cir. 2008) (holding that as long as action is not frivolous, court has federal question jurisdiction over claim brought under ERISA, 29 U.S.C. § 1132). Even without an additional basis for jurisdiction, the Court has supplemental jurisdiction over the defendant's counterclaim pursuant to 28 U.S.C. § 1367. *See Davet v. City of Cleveland*, 456 F.3d 549, 553 (6th Cir. 2006).

However, the *Rooker-Feldman* doctrine, a doctrine whose effect has been narrowed by appellate decisions over the years, does pose a substantial obstacle to consideration of the

defendant's counterclaim in this case.  The *Rooker-Feldman* doctrine is premised on the notion that

only the Supreme Court has jurisdiction to review state court judgments.  *See* 28 U.S.C. § 1257.

> The *Rooker-Feldman* doctrine, . . . is confined to cases of the kind from which the
> doctrine acquired its name: cases brought by state-court losers complaining of
> injuries caused by state-court judgments rendered before the district court
> proceedings commenced and inviting district court review and rejection of those
> judgments.  *Rooker-Feldman* does not otherwise override or supplant preclusion
> doctrine or augment the circumscribed doctrines that allow federal courts to stay or
> dismiss proceedings in deference to state-court actions.

*Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005).  The doctrine has

been applied by the Supreme Court only twice – in the two cases that gave the doctrine its name.

*Id.* at 283.  Instead, the Supreme Court has directed that most actions should be dealt with on

preclusion grounds, rather than jurisdiction.  *See id.* at 293 ("Nor does § 1257 stop a district court

from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal

court a matter previously litigated in state court.  If a federal plaintiff 'present[s] some independent

claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he

was a party . . . , then there is jurisdiction and state law determines whether the defendant prevails

under principles of preclusion.'" (quoting *GASH Assocs. v. Rosemont*, 995 F.2d 726, 728 (7th Cir.

1993))); *Todd v. Weltman, Weinberg & Reis Co., L.P.A.*, 434 F.3d 432, 437 (6th Cir. 2006) (holding

that "even if the [plaintiff's] independent claim was inextricably linked to the state court decision,

preclusion law was the correct solution to challenge the federal claim, not *Rooker-Feldman*").

   In his counterclaim, the defendant requests that the Court "review all child support orders

issued by both States," and he asks for a determination that the Pennsylvania orders control and the

Michigan orders do not. He lost that very argument in state court.  He does not raise any independent

claim or legal theory to support these requests here, other than his request for a declaration that the

Michigan order was wrong.  Instead, he argues that "[w]ithout relief of this Court the Defendant-Counter Plaintiff . . . maybe [sic] financially irrevocably [sic] harmed by a Michigan Circuit Court Opinion/Order."  Chuff's Countercl. ¶ 1.  In other words, he is "complaining of injuries caused by state-court judgments." *Exxon Mobil*, 544 U.S. at 284.  This Court's jurisdiction does not extend to this sort of action, which is an ill-disguised attempt to appeal the determination of the Genesee County court.

The Court concludes, therefore, that the *Rooker-Feldman* doctrine bars review by this Court of the Genesee County court's determination of the amount of arrearage owed by Chuff to Tribble.  Even if that were not the case, Chuff could not prevail on that issue here, because, as explained more fully below, the doctrine of *res judicata*, or claim preclusion, would defeat his request for relief in this Court.

B.

The plaintiff's complaint seeks a judicial determination of the following three issues:

a) Whether the 18-month rule compels a return of the escrowed funds to Chuff, notwithstanding the doctrines of estoppel and merger. . .
b) Whether the Order for Support submitted dated September 10th, 2004 is a QDRO.
c) Whether any subsequent QDRO entered by the Circuit Court, calling for a greater payment to Tribble, or dealing with a different ERISA-qualified retirement asset, is a QDRO.

Compl. ¶ 32.  The first two questions are relevant to determining whether she is entitled to the money that was held in escrow by the Fund while the matter was sorted out in Genesee County Circuit Court and subsequently deposited with the Court pursuant to the Interpleader Act, 28 U.S.C. § 1335.  In an interpleader action, the Court must undertake a two stage analysis:

During the first stage, the court determines whether the stakeholder has properly invoked interpleader, including whether the court has jurisdiction over the suit, whether the stakeholder is actually threatened with double or multiple liability, and

-13-

whether any equitable concerns prevent the use of interpleader. During the second stage, the court determines the respective rights of the claimants to the fund or property at stake via normal litigation processes, including pleading, discovery, motions, and trial.

*United States v. High Technology Products, Inc.*, 497 F.3d 637, 641 (6th Cir. 2007) (internal citations omitted). The Fund has deposited the funds and been discharged from the case, and therefore, the Court is now at the second stage, where it must determine the rights of Ms. Tribble and Mr. Chuff to this money.

## 1. ERISA

The Employee Retirement Income Security Act of 1974 ("ERISA") generally provides that "benefits provided under [a] plan [covered by the act] may not be assigned or alienated." 29 U.S.C. § 1056(d)(1). However, "[i]n 1984, Congress amended ERISA through passage of the Retirement Equity Act (REA) of 1984, Pub. L. No. 98-397, 98 Stat. 1426, in an effort to guarantee that private retirement-income systems would provide fair treatment for women." *Metropolitan Life Ins. Co. v. Marsh*, 119 F.3d 415, 419 (6th Cir. 1997). "Among the Act's provisions were amendments to ERISA which insured that the statute's antigarnishment and pre-emption provisions could not be used to block the enforcement of 'qualified domestic relations orders' – generally, court orders providing for child support and alimony payments by ERISA plan participants." *Mackey v. Lanier Collection Agency & Service, Inc.*, 486 U.S. 825, 838 (1988). Now, a QDRO may be enforced against a plan, provided it satisfies ERISA's requirements.

The requisites of a support order under ERISA are as follows:

(B) For purposes of this paragraph--

    (i) the term "qualified domestic relations order" means a domestic relations order–

-14-

(I) which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan, and

(II) with respect to which the requirements of subparagraphs (C) and (D) are met, and

(ii) the term "domestic relations order" means any judgment, decree, or order (including approval of a property settlement agreement) which–

(I) relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant, and

(II) is made pursuant to a State domestic relations law (including a community property law).

(C) A domestic relations order meets the requirements of this subparagraph only if such order clearly specifies–

(i) the name and the last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order,

(ii) the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined,

(iii) the number of payments or period to which such order applies, and

(iv) each plan to which such order applies.

(D) A domestic relations order meets the requirements of this subparagraph only if such order–

(i) does not require a plan to provide any type or form of benefit, or any option, not otherwise provided under the plan,

(ii) does not require the plan to provide increased benefits (determined on the basis of actuarial value), and

-15-

(iii) does not require the payment of benefits to an alternate payee which are required to be paid to another alternate payee under another order previously determined to be a qualified domestic relations order.

29 U.S.C. § 1056(d)(3)(B). Looking at the terms of the income withholding order entered in the state court, it appears that the requirements of the statute have been satisfied. But the Court need not decide that question, because the state court has determined that its order is a QDRO, and that determination is entitled to preclusive effect, as explained below.

ERISA further contains a provision that a plan must segregate funds pending a determination whether an order for payment of benefits to an alternate payee is a QRDO, but after eighteen months the segregated funds must be released. The statute reads:

(H)(i) During any period in which the issue of whether a domestic relations order is a qualified domestic relations order is being determined (by the plan administrator, by a court of competent jurisdiction, or otherwise), the plan administrator shall separately account for the amounts (hereinafter in this subparagraph referred to as the "segregated amounts") which would have been payable to the alternate payee during such period if the order had been determined to be a qualified domestic relations order.

(ii) If within the 18-month period described in clause (v) the order (or modification thereof) is determined to be a qualified domestic relations order, the plan administrator shall pay the segregated amounts (including any interest thereon) to the person or persons entitled thereto.

(iii) If within the 18-month period described in clause (v)–

(I) it is determined that the order is not a qualified domestic relations order, or
(II) the issue as to whether such order is a qualified domestic relations order is not resolved,

then the plan administrator shall pay the segregated amounts (including any interest thereon) to the person or persons who would have been entitled to such amounts if there had been no order.

-16-

(iv) Any determination that an order is a qualified domestic relations order which is made after the close of the 18-month period described in clause (v) shall be applied prospectively only.

(v) For purposes of this subparagraph, the 18-month period described in this clause is the 18-month period beginning with the date on which the first payment would be required to be made under the domestic relations order.

29 U.S.C. § 1056(d)(3)(H). The defendant did not raise the issue in the state court whether this statute compels disbursement of the impounded funds to him.

## 2. Res judicata

This Court need not determine the application of ERISA to the interpleaded money, because Chuff is precluded by *res judicata* principles from raising the matter. "Section 28 U.S.C. § 1738 generally requires 'federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so.'" *Haring v. Prosise*, 462 U.S. 306, 313 (1983) (quoting *Allen v. McCurry*, 449 U.S. 90, 96 (1980)). Application of this statute depends on the state's laws of issue preclusion and claim preclusion (although the Michigan Supreme Court "generally uses the terms 'res judicata' and 'collateral estoppel' rather than the phrases 'claim preclusion' and 'issue preclusion.'" *J.A.M. Corp. v. AARO Disposal, Inc.*, 461 Mich. 161, 168, 600 N.W.2d 617, 620 (1999)). Under Michigan law regarding claim preclusion, "[a] second action is barred when (1) the first action was decided on the merits, (2) the matter contested in the second action was or could have been resolved in the first, and (3) both actions involve the same parties or their privies." *Dart v. Dart*, 460 Mich. 573, 586, 597 N.W.2d 82, 88 (1999). For issue preclusion to bar subsequent litigation, "a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment. In addition, the same parties must have had a full opportunity to litigate the issue, and there must be mutuality of estoppel."

-17-

*Nummer v. Treasury Dept.*, 448 Mich. 534, 542, 533 N.W.2d 250, 253 (1995). For an administrative decision to have preclusive effect, the decision must have been adjudicatory in nature with a right to appeal, and the legislature must have intended to make the decision final absent an appeal. *Ibid.* The party asserting preclusion bears the burden of proof. *See Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 572 (6th Cir. 2008).

The doctrine of *res judicata* gives preclusive effect to the Genesee County court's October 2007 opinion and order disposing of the escrowed funds, as all three elements required under Michigan law are present. *See Dart*, 460 Mich. at 586, 597 N.W.2d at 88. That court decided the disposition of the money on the merits, and not on some procedural ground, satisfying the first element. Equally obvious is the fact that the same parties exist in both the state and federal actions. (Of course, the Fund was not a party to the state case; however, as the stakeholder, it was discharged from this case, and does not claim an interest in the money. *See* 28 U.S.C. § 2361. Therefore, its presence in the litigation does not change matters.)

The only questionable element is the second: whether "the matter contested in the second action" – which state's orders controlled; whether the order was a QDRO; and did the 18-month rule compel return of the escrowed funds to Chuff – "was or could have been resolved in the first." *Dart*, 460 Mich. at 586, 597 N.W.2d at 88. Michigan "uses a transactional test to determine if the matter could have been resolved in the first case." *Washington v. Sinai Hosp. of Greater Detroit*, 478 Mich. 412, 420, 733 N.W.2d 755, 760 (2007). Under this approach, "'the assertion of different kinds or theories of relief still constitutes a single cause of action if a single group of operative facts give rise to the assertion of relief.'" *Ibid.* (quoting *Adair v. Michigan*, 470 Mich. 105, 124, 680 N.W.2d 386, 397 (2004)). The Genesee County court considered the disposition of the funds placed

-18-

in escrow.  If Chuff wished to prevent the money going to Tribble, he could have – and should have

– raised the argument that the 2004 court order was not a QDRO, or that ERISA requires that the

issue be resolved within eighteen months.  He either failed to do so, or did so but lost the argument.

The state court was of competent jurisdiction to adjudicate the matter, so Chuff's failure to raise the

issues is not excused.  Although it is true that "ERISA's express grant of exclusive jurisdiction to

the federal courts divests state courts of jurisdiction to hear claims *brought under ERISA*," *Thiokol*

*Corp. v. Department of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 379 (6th Cir. 1993)

(emphasis in original), state courts have jurisdiction to determine whether their orders are QDROs,

*Geiger v. Foley Hoag LLP Retirement Plan*, 521 F.3d 60, 67 (1st Cir. 2008) (collecting cases);

*Scales v. General Motors Corp. Pension Adm'r*, 275 F. Supp. 2d 871, 876-77 (E.D. Mich. 2003)

("The state courts have concurrent jurisdiction regarding the interpretation of QDROs, and are fully

competent to adjudicate whether their own orders are QDROs." (internal citations omitted)).

     In his answer, Chuff asserts that he was not given a fair opportunity to litigate before the

state court.  It is true that due process requires that the first decision was entered only after a "full

and fair opportunity" to litigate the issue was provided to the parties.  *See Kremer v. Chemical*

*Const. Corp.*, 456 U.S. 461, 480-81 (1982) (holding that "the judicially created doctrine of collateral

estoppel does not apply when the party against whom the earlier decision is asserted did not have

a 'full and fair opportunity' to litigate the claim or issue"); Restatement (Second) of Judgments §

2.  However, the defendant has not provided this Court with *any* evidence that he was limited in his

argument.  Nor does it appear that Chuff *could* support such a claim.  After all, he was the one who

raised the issue with the motion he filed in state court.  The Genesee County court's order

acknowledged that the judge considered the pleadings and brief submitted by Chuff, but was

-19-

persuaded by the plaintiff's legal reasoning.  Without any evidence showing that Chuff was denied the opportunity to argue the matter, the state court order is presumptively valid.  Chuff's challenge appears to be little more than a complaint that the judge decided contrary to his legal position.  This, of course, does not undermine the finality of the earlier decision.

Chuff asks why the *Pennsylvania* support orders should not be given preclusive effect, particularly the determination by Domestic Relations Officer Nancy D. McLaurin that "that jurisdiction for the issuance and enforcement of all support matters in Tribble vs. Chuff are vested in the Court of Common Pleas of Bucks County" and "no arrearages are due the plaintiff."  Chuff's Countercl., Ex. PP.  But that matter is easily resolved.

The principles of claim preclusion apply in the Pennsylvania courts.  *Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 548 (3d Cir. 2006) (quoting *Balent v. City of Wilkes-Barre*, 542 Pa. 555, 563, 669 A.2d 309, 313 (1995)).  Similar to Michigan, Pennsylvania courts also insist that four factors be present for a finding of issue preclusion: "1) the issue decided in the prior adjudication was identical with the one presented in the later action, 2) there was a final judgment on the merits, 3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication, and 4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in a prior action."  *Tucker v. Philadelphia Daily News*, 577 Pa. 598, 607 n. 11, 848 A.2d 113, 119 n. 11 (2004).

The Pennsylvania notices by Ms. McLaurin have no preclusive effect in this litigation.  The "notice" was not obviously produced by a court, but by a "Domestic Relations Officer."  Domestic Relations Officers engage in conduct that is " judicial in nature," but their duties are to "assist[]" the Pennsylvania courts in preparing support orders.  *See McKinney v. Carolus*, 430 Pa. Super. 450, 457,

-20-

634 A.2d 1144, 1147 (1993).  They make recommendations that are then considered, and possibly adopted, by the court.  *See Thomas v. Thomas*, 760 A.2d 397, 398 (Pa. Super. Ct. 2000).  Thus, their role can be analogized to that of a United States probation officer, or pretrial services officer, or a state Friend of the Court attorney.  Without diminishing the importance of their duties, a notice signed by such an officer hardly qualifies as a judgment of a court worthy of preclusive effect.

Moreover, there is no evidence that the plaintiff had any notice the matter was being contested in the Pennsylvania forum.  To the contrary, an affidavit filed by the plaintiff's attorney states that neither he nor his client had any notice that the domestic relations officer was asked to make this determination.  Pl.'s Mot., Ex. E, Streby Aff. ¶ 2-3.  Pennsylvania courts recognize that notice is necessary before action can be taken by domestic relations officers.  *See McKinney*, 430 Pa. Super. at 457, 634 A.2d at 1147.  As noted above, due process requires that notice and an opportunity to litigate must be shown before a prior decision can be afforded preclusive effect.  *See Kremer*, 456 U.S. at 480-81; Restatement (Second) of Judgments § 2.  Therefore, in the absence of any notice or any order entered by a court, there is no Pennsylvania order that is entitled to preclusive effect in this litigation.

The Court finds, therefore, that the Michigan court's determination that Chuff owes a substantial child support arrearage to Tribble, that the income withholding order directing payment of a portion of Chuff's pension benefits to Tribble is a QDRO, and that Tribble is entitled to the segregated funds is entitled to preclusive effect.  Chuff's request in his counterclaim for a contrary determination by this Court must be denied, and his resistance to an order directing the funds on deposit to be disbursed to Tribble lacks a sound legal basis.

3.  Whether future orders entered by the Genesee County court will constitute QDROS

-21-

The plaintiff also requests that the Court determine "[w]hether any subsequent QDRO entered by the Circuit Court, calling for a greater payment to Tribble, or dealing with a different ERISA-qualified retirement asset, is a QDRO." Compl. ¶ 32. The Court will not address that claim because it is not ripe.

"As a rule, we do not allow litigation on premature claims to ensure that courts litigate 'only existing, substantial controversies, not hypothetical questions or possibilities.'" *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 582 (6th Cir. 2008) (quoting *City Comm., Inc. v. City of Detroit*, 888 F.2d 1081, 1089 (6th Cir. 1989)). In considering whether a claim is ripe, courts consider two questions: "(1) is the claim 'fit[ ] . . . for judicial decision' in the sense that it arises in a concrete factual context and concerns a dispute that is likely to come to pass? and (2) what is 'the hardship to the parties of withholding court consideration'?" *Warshak v. United States*, 532 F.3d 521, 525 (6th Cir. 2008) (en banc) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967)); *see also Kentucky Press Ass'n, Inc. v. Kentucky*, 454 F.3d 505, 509 (6th Cir. 2006) (describing the first question as two separate questions). The plaintiff must establish that each claim brought is ripe for judicial resolution. *National Rifle Ass'n of America v. Magaw*, 132 F.3d 272, 284 (6th Cir. 1997). It appears that a complaint that is not ripe can become ripe during the litigation. *Blanchette v. Connecticut General Ins. Corporations*, 419 U.S. 102, 140 (1974) ("Whatever may have been the case at the time of the District Court decision, there can be little doubt, for reasons to be detailed, that some of the 'conveyance taking' issues can and must be decided at this time. And, since ripeness is peculiarly a question of timing, it is the situation now rather than the situation at the time of the District Court's decision that must govern."); *Casden v. Burns*, 306 F. App'x 966, 972 (6th Cir. Jan. 16, 2009) (noting uncertainty on the point). But that is not the case here.

-22-

Although the Genesee County court entered an amended QDRO after the plaintiff filed her complaint in this case, any contest over that order presently is merely hypothetical. The plaintiff has not shown, either presently or in the past, any imminent injury related to the Genesee County circuit court's entry of an order garnishing Chuff's pension. It is possible that the Plan will find that the 2008 order or some future order is not a QDRO and deny payment to the plaintiff on that basis. However, this concern is speculative at this point. In fact, the Plan has indicated that it believes the 2008 order to be a QDRO. Moreover, the injury of which the plaintiff would complain in such an instance would be caused by the Plan, which is no longer a party to this case. Therefore, the Court concludes that any contest over the future effect of the present or possible later-entered orders is not ripe.

III.

The plaintiff seeks an award of attorney's fees under ERISA, which provides:

> In any action under this subchapter (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

29 U.S.C. § 1132(g)(1). The first question is whether the plaintiff's claim qualifies as "any action under this subchapter. . ." *See ibid.* Section 1132(a) authorizes the following actions:

> A civil action may be brought–
> (1) by a participant or beneficiary–
>> (A) for the relief provided for in subsection (c) of this section, or
>> (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
> . . .
> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;

-23-

29 U.S.C. § 1132(a).  The Sixth Circuit has held that an interpleader action qualifies under section 1132(a)(3)(B) as one seeking equitable relief, while noting that an action seeking a declaration of liability does not.  *Metropolitan Life Ins. Co. v. Marsh*, 119 F.3d 415, 418 (6th Cir. 1997).  And "[a] person who is an alternate payee under a qualified domestic relations order shall be considered for purposes of any provision of this chapter a beneficiary under the plan."  29 U.S.C. § 1056(d)(3)(J); *Boggs v. Boggs*, 520 U.S. 833, 847 (1997) ("In creating the QDRO mechanism Congress was careful to provide that the alternate payee, the 'spouse, former spouse, child, or other dependent of a participant,' is to be considered a plan beneficiary.").

The Sixth Circuit has articulated a number of factors for a court to consider when presented with a request for attorney's fees under this provision:

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.

*Moon v. Unum Provident Corp.*, 461 F.3d 639, 642 (6th Cir. 2006).  These factors are "not dispositive," but merely are "considerations representing a flexible approach."  *Ibid.*  "[I]n our Circuit, there is no presumption that attorney's fees will be awarded."  *Ibid.*

The plaintiff, who is considered to be a beneficiary because she was asserting her rights under a QDRO, seeks equitable relief in her complaint, asking that the Court order the Fund to deposit money with the Court.  However, that relief ultimately was not awarded to the plaintiff, as the Fund brought its own interpleader action.  Moreover, the plaintiff did not seek any equitable relief against Chuff, against whom she presumably seeks the attorney's fee award.  Instead, she

-24-

sought a declaration of various legal issues against Chuff, which does not qualify her for relief under section 1132(g)(1).

The plaintiff also seeks an award of attorney's fees as a party in an interpleader action. Although "[t]he interpleader statute does not contain an attorney's fee provision," "'modern federal practice follows the traditional equity rule that gives the trial court discretion to allow a disinterested stakeholder to recover attorney's fees and costs from the stake itself.'" *First Trust Corp. v. Bryant*, 410 F.3d 842, 856 (6th Cir. 2005) (quoting 4 Moore's Federal Practice § 22.06, at 22-98 to 22-99 & n. 4). Nonetheless, in *First Trust Corp.*, the Sixth Circuit reversed a district court that awarded attorney's fees to a fund under an ERISA statutory provision and the interpleader statute. The Court first applied the five-part test applicable to ERISA actions, laid out above, *id.* at 851, and found that all factors weighed against the award of fees to the fund. The Court found that the fund had acted in bad faith by inexplicably failing to join a required party and filing in the wrong venue; no deterrent effect was needed against the plan participant because she "*did nothing wrong*," and the fund lost on every significant legal issue it raised. *Id.* at 854-55. The Court then found that the fund was not entitled to attorney's fees under the interpleader statute because "for all the reasons discussed in this opinion, equity does not favor an award of attorney's fees to [the fund]," and "such a result on equitable grounds would be inconsistent with our decision that [the fund] is not entitled to attorney's fees under an express statutory provision that authorizes fees in certain circumstances." *Id.* at 856.

The Sixth Circuit has failed to provide further guidelines in published cases. However, in a 2005 decision, the Sixth Circuit announced the following standard for attorney's fees in interpleader actions:

> "[A] federal court has discretion to award costs and counsel fees to the stakeholder in an interpleader action, whether brought under Rule 22 or the interpleader statute, whenever it is fair and equitable to do so." [7 Wright, Miller & Kane, Federal Practice and Procedure: Civil § 1719 (3d ed. 2001).] An interpleading party is entitled to recover costs and attorney's fees when it is (1) a disinterested stakeholder, (2) who has conceded liability, (3) has deposited the disputed funds into court, and (4) has sought a discharge from liability. *Septembertide Publishing v. Stein and Day*, 884 F.2d 675 (2d Cir. 1989). The only limiting principle is reasonableness, and it is at the discretion of the Court to determine what award is appropriate. 7 Wright, Miller & Kane, supra, § 1719.

*Holmes v. Artists Rights Enforcement Corp.*, 148 F. App'x 252, 259 (6th Cir. Jul. 13, 2005).

Applying this standard, the Sixth Circuit held that attorney's fees were appropriate, writing: "In this case, UMG was a disinterested stakeholder that conceded liability, offered to deposit the funds into court, and sought discharge. UMG warned the Vandellas it would seek attorneys' fees and costs if forced to file an interpleader action." *Ibid.*

The plaintiff does not qualify as the stakeholder in an interpleader action, and would not qualify for attorney's fees from Chuff on that basis. The plaintiff has not argued any other legal basis for attorney's fees against Chuff, and the Court finds none. Therefore, her request will be denied.

IV.

The Court concludes that Philip Chuff's request that this Court review and reject the state court's order determining arrearages (in which the state court preferred the Michigan support orders over the Pennsylvania support orders) is barred by the *Rooker-Feldman* doctrine, since the relief requested amounts to an appeal of a state court judgment. Moreover, the other issues that Chuff raises as an obstacle to the disbursement over the disputed funds to Tribble have either been decided against Chuff by the Michigan court, or they are barred from consideration by the doctrine of *res judicata*. The Court determines therefore that Chuff's counterclaim has no merit as a matter of law.

-26-

The plaintiff is entitled to the funds on deposit, subject to the Fund's right to renew its request for attorney's fees. The plaintiff's request for a determination of the Fund's future obligation to disburse as a result of present or future orders is not ripe.

Accordingly, it is **ORDERED** that the plaintiff's motion for summary judgment [dkt. #43] is **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that the plaintiff is entitled to the funds on deposit with this Court under the interpleader order [dkt #15] subject to the Fund's renewal of its motion for attorney's fees. If the Fund wishes to renew its motion, it shall do so **on or before August 25, 2009**.

It is further **ORDERED** that the defendant's counterclaim is **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that the balance of the plaintiff's complaint is **DISMISSED WITHOUT PREJUDICE**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  July 28, 2009

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 28, 2009.

s/Lisa M. Ware
LISA M. WARE